IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DEVION WILLIAMS                                                                                          PLAINTIFF

v.                                           Case No. 4:20-cv-4070

BNSF RAILWAY COMPANY and
UNION PACIFIC RAILRAOD COMPANY                                                          DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendant Union Pacific Railway Company's Motion for Summary Judgment. (ECF No. 50). Plaintiff has responded (ECF No. 57), and Defendant has filed its reply. (ECF No. 61). The Court finds this matter ripe for consideration.

### I. BACKGROUND

This case arises out of injuries Plaintiff suffered after he fell beneath a moving train operated by co-Defendant BNSF Railway Company. The accident occurred while Plaintiff was attempting to cross a railyard owned and operated by Defendant Union Pacific Railroad ("Defendant"). Plaintiff alleges one count of negligence against both BNSF and Defendant. The following facts relevant to Defendant's summary judgment motion are generally undisputed.

On the night of December 10, 2019, Plaintiff was walking south from downtown Texarkana toward his neighborhood in nearby College Hill. Defendant's railyard is situated directly between Texarkana and College Hill and runs at an angle from the southwest toward the northeast. Plaintiff was required to cross the railyard in order to reach his neighborhood. An overpass is situated over the northeastern portion of the railyard and provides a sidewalk for pedestrians that leads directly into College Hill. However, Plaintiff chose not to use the overpass, opting instead to use a shortcut that runs directly over the railroad tracks.

Plaintiff's shortcut involved two pathways that run perpendicular to the railyard. On the north side of the railyard, a gravel path runs from a paved road and ends just before the first set of train tracks. On the south side of the railyard, a paved pathway runs away from the railyard directly opposite from where the gravel path is located. An aerial view of the railyard shows that both pathways are aligned with each other on either side of the railyard. (ECF No. 59-2). Plaintiff alleges, and it is not disputed, that the pathways appear to indicate an old or abandoned road that previously crossed the railyard at that location. Plaintiff further alleges that he and members of the public frequently use the pathway as a shortcut between downtown Texarkana and College Hill.[1]

Plaintiff entered the railyard from the north via the gravel pathway. It is undisputed that a no trespassing sign is posted in the area where Plaintiff approached the railyard. The no trespassing sign is not lit at night. There were also no fences or barriers obstructing Plaintiff's path toward the tracks. As Plaintiff approached the railyard, he observed a train sitting idle along one of the railyard's center tracks. From Plaintiff's location, he could observe that one end of the train was situated further along the track toward the northeast. The other end of the train was situated further west and was obstructed from view by a curve in the tracks.

Plaintiff decided to climb between two railcars in order to cross to the other side of the railyard. Unbeknownst to Plaintiff, the train's crewmembers were simultaneously preparing to move the train onto a new set of tracks. Plaintiff, oblivious to the train's imminent movement, crossed several sets of tracks and climbed between two stationary railcars. At the same time Plaintiff climbed the railcars, train operators began to move the train west. Plaintiff lost his balance and fell beneath the moving train as a result. The train caused serious injuries to both of Plaintiff's

---

[1] Plaintiff has presented affidavits from Texarkana residents who state that they frequently cross between downtown Texarkana and College Hill via the path described. (ECF No. 59-13).

legs.

Plaintiff presented deposition testimony from Defendant's Manager of Yard Operations, Adolfo Contreras, as part of the summary judgment record. (ECF No. 60-11). Contreras testified that his job in the Texarkana railyard was to manage trains switching between different tracks in the yard. In this role, Contreras would monitor railyard activity to ensure safety and compliance with government regulations. Contreras stated that there are four cameras in the railyard, and that part of his duties was to monitor the feed from those cameras. Plaintiff argues that part of the reason for the cameras is for Defendant's employees, such as Contreras, to watch for people crossing the tracks. However, Contreras's testimony only states that the video monitors "can be used" for the purpose of seeing "if people are crossing the railroad tracks[.]" (ECF No. 60-11, Contreras Dep. at pg. 18:2-5).

Contreras testified, and Plaintiff does not dispute, that no trespassing signs are posted in the yard and in the location where Plaintiff attempted to cross the tracks. However, the no trespassing signs are not lit and Contreras states that he had never seen any of the signs at night. Contreras also testified that if he did see a pedestrian in the railyard, he would notify law enforcement and stop all movement in the yard. Contreras stated that he only saw people in the railyard three times while working in Texarkana. Contreras worked in the Texarkana railyard for approximately one year and three months. Contreras stated that he never saw anyone crossing the railyard where Plaintiff's injury occurred.

Contreras arrived at the railyard sometime between 8:00 p.m. and 9:00 p.m. on the night Plaintiff was injured. Soon after Contreras arrived at work, he looked at the video monitors and saw the flashing lights of police cars. The feed showing the police cars captured the area where Plaintiff was injured. Contreras traveled to the location captured by the video monitor and met

with police. Plaintiff had already been transported to the hospital by the time Contreras arrived at the location. Contreras did not observe Plaintiff anywhere near the railyard on the night of Plaintiff's injury and did not see any person approaching the railyard on the monitors. There is no evidence in the record that any of Defendant's employees saw Plaintiff approach the yard before his injuries occurred.

## II.  LEGAL STANDARD

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a

properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. DISCUSSION

Plaintiff's Second Amended Complaint alleges that his injuries were caused by the negligent operation of the train. To prove negligence under Arkansas law,[2] "there must be a failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." *Marlar v. Daniel*, 247 S.W.3d 473, 476 (Ark. 2007). Defendant argues that it is entitled to summary judgment because it did not owe a legal duty of care to Plaintiff under the circumstances. Accordingly, the Court must first determine what duty of care, if any, Defendant owed Plaintiff under the circumstances presented. If Defendant indeed owed Plaintiff a duty of care, the Court must then determine whether there is a genuine issue of material fact regarding whether Defendant breached that duty of care. The court will consider each matter in turn.

**A. Duty**

Defendant's argument that it owed no duty of care to Plaintiff is based on Defendant's assertion that Plaintiff was trespassing when he attempted to cross Defendant's railyard. Plaintiff does not explicitly reject Defendant's categorization of him as a trespasser. However, Plaintiff argues generally that Defendant nevertheless owed him a duty of care because pedestrians frequently crossed the railyard between the gravel and paved pathways. Although not explicit, Plaintiff's argument necessarily turns on whether Plaintiff had a license to cross the railyard by

---

[2] A federal court sitting in diversity, like the Court in this case, must apply the substantive law of the forum state, absent a federal statutory or constitutional directive to the contrary. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010). The Court is unaware of a federal statutory or constitutional directive providing otherwise, so Arkansas substantive law applies to this case.

implicit invitation. Accordingly, Plaintiff's status as a trespasser or a licensee by implication while on the railyard is directly before the Court.

Under Arkansas law, a trespasser is one who comes upon the land without the consent of the possessor. *Coleman v. United Fence Co.*, 668 S.W.2d 536, 537 (1984); *see also* Ark. Code Ann. § 18-60-108(c). In contrast, a licensee is one who is on the premises of a landowner under an express or implied invitation, for one's own purpose and not for the mutual benefit of oneself and the owner. *See Bader v. Lawson*, 898 S.W.2d 40, 42 (1995). This Court has specifically held that under Arkansas law, "an implied invitation requires some affirmative act on the part of the landowner to induce the person on to its property" and that the existence of a "well-worn path" beside railroad tracks does not "compel or induce the public . . . to use the path" or "come on to the railroad's property." *Hall v. Union Pacific R.R. Co.*, No. 06-cv-1012, 2007 WL 676660 at *5 (W.D. Ark. March 1, 2007) (citing *Aluminum Co. of America v. Guthrie*, 793 S.W.2d 785(1990); *Missouri Pac. R. Co. v. English*, 61 S.W.2d 445 (1933); *Louis Iron Mountain & Southern Ry. Co. v. Dooley*, 92 S.W. 789 (1906)).

The Court finds that Plaintiff was a trespasser when he attempted to cross Defendant's railyard. It is undisputed that a no trespassing sign is posted in the area where Plaintiff attempted to cross the railyard and there is no evidence to suggest that Plaintiff had Defendant's consent to use the pathway. There is also no evidence showing that Defendant made any affirmative attempt to entice pedestrians to use the pathway as a shortcut. Indeed, Plaintiff acknowledges that the pathway is either an old or abandoned road that *previously* crossed the tracks. There is no evidence showing that this pathway is intended for present use. Defendant's passive knowledge that pedestrians use the railyard as a shortcut, without more, cannot be held as an affirmative act sufficient to entice others to cross the railyard. Moreover, the testimony provided by Contreras

states that, in the year before Plaintiff's injury, Contreras had never seen any pedestrian use the pathway crossed by Plaintiff. Accordingly, the Court finds that Plaintiff was trespassing upon Defendant's railyard when his injuries occurred because he did not have Defendant's affirmative or implied consent to use the pathway as a shortcut over the railyard.

### 1. Duty to Trespassers

Defendant argues that it owed no duty to Plaintiff as a trespasser because Plaintiff's presence in the railyard was unknown to Defendant when Plaintiff's injuries occurred. In response, Plaintiff argues that Defendant still owed a duty to keep a constant lookout for trespassers while the train was in motion.

Generally, "[a]n owner, lessee, or occupant of land does not owe a duty of care to a trespasser on the land . . . until the presence of the trespasser on the premises is known[.]" Ark. Code Ann. § 18-60-108(a)(1)-(2). However, Arkansas law also states that "it shall be the duty of all persons running trains . . . to keep a constant lookout for all persons, including . . . trespassers . . . upon the track of any and all railroads." Ark. Code Ann. § 23-12-907(a)(1). The Arkansas Supreme Court has long affirmed that the duty to keep a proper lookout statute applies without regard to a plaintiff's status as a trespasser. *See Chicago, R.I. & P. Ry. Co. v. Gunn*, 166 S.W. 568, 569 (Ark. 1914); *see also St. Louis, I.M. & S. Ry. Co. v. Elrod*, 173 S.W. 836, 837 (Ark. 1915) (holding that the duty to keep a constant lookout applied even though it was alleged that Plaintiff was "lying in a drunken stupor, with his arm across one of the rails, when the locomotive struck him").

As an initial matter, it is undisputed that Plaintiff's presence in the railyard had not been discovered by Defendant at the time Plaintiff's injuries occurred. Because of this, Defendant owed no duty of care to Plaintiff under Ark. Code Ann. § 18-60-108. Accordingly, Defendant is entitled

to judgment on Plaintiff's negligence claim unless Plaintiff can establish that Defendant owed him a separate duty of care under Arkansas's lookout statute.

The Court finds that Defendant did not owe a duty of care to Plaintiff under Arkansas's lookout statute. The duty to keep a constant lookout applies to "persons running trains . . . upon any railroad[.]" Ark. Code Ann. § 23-12-907(a)(1). The Arkansas Supreme Court has held that "there is no reason for supposing the Legislature used the word 'running' in any other than its narrow and restricted sense of causing trains to be moved or propelled." *St. Louis-San Francisco Ry. Co. v. Young*, 299 S.W. 750, 152 (Ark. 1927). In support, the Court adopted the reasoning that:

> The rule has its origin in the inability of the plaintiff to prove his injuries to have been the result of negligence in cases where the facts lie peculiarly within the knowledge of those who produce the injury. That may be said to be the case where the injury is caused by the actual running of the train. Those intrusted [sic] with the work of propulsion alone can know, as a general thing, what they have or have not done in that regard, while the injured party or others can only surmise or infer as to what the train men actually did know by the circumstances and resultant conditions in any given case.

*Id.* (quoting *St. Louis & S.F. Ry. Co. v. Cooksey*, 69 S.W. 259, 260 (Ark. 1902)).

Defendant was not involved in the actual propulsion of the train that injured Plaintiff. Instead, BNSF crewmembers were solely responsible for the movement and direction in which the train traveled. It is undisputed that BNSF's crewmembers caused the train's movements that produced Plaintiff's injury. Accordingly, Defendant was not involved in "running" the train that caused Plaintiff's injury. Therefore, Defendant had no duty to keep a lookout for Plaintiff while the train was in motion because Plaintiff was an undiscovered trespasser at the time Plaintiff's injuries occurred.

Based on the forgoing, there is no genuine issue of material fact regarding whether

8

Defendant owed a duty of care to Plaintiff under the circumstances, and Defendant is entitled to judgment on Plaintiff's negligence claim as a matter of law.

### C. Abnormally Dangerous Crossing

Plaintiff attempts to avoid summary judgment by arguing that Plaintiff's shortcut was an abnormally dangerous railroad crossing and thus Defendant was required to warn pedestrians of that abnormally dangerous condition. *See Scoville v. Missouri Pac. R. Co.*, 458 F.2d 639, 645 (8th Cir. 1972) (holding that under Arkansas law, "a railroad company may be found negligent for its failure to give special warnings at a crossing which is rendered abnormally dangerous by reason of unusual circumstances or conditions").

Plaintiff's argument is misplaced. Although a railroad may be found negligent for its failure to give special warnings at an abnormally dangerous railroad crossing, Plaintiff's shortcut across the railyard was not at an established railroad crossing. Indeed, Plaintiff acknowledges that the pathway across the railyard appears to indicate that a road previously crossed this section of the railyard. The only evidence showing that Plaintiff's shortcut is presently utilized as a railroad crossing is Plaintiff's assertion that pedestrians frequently used the railway to cross between downtown Texarkana and College Hill. As stated above, Plaintiff was trespassing over the railyard when his injuries occurred. Moreover, evidence that pedestrians frequently used Plaintiff's shortcut, without more, is insufficient to convert the shortcut into an established railroad crossing. Accordingly, there is no genuine issue of material fact regarding whether Plaintiff was injured at an established railroad crossing and Defendant owed no duty of care to warn trespassers of any abnormally dangerous conditions in the area surrounding Plaintiff's shortcut.

### IV. CONCLUSION

For the above-stated reasons, the Court finds that Defendant's Motion for Summary

Judgment (ECF No. 50) should be and hereby is **GRANTED**.  All claims against Union Pacific are hereby **DISMISSED WITH PREJUDICE**.  A judgment of even date consistent with this opinion shall issue.

    **IT IS SO ORDERED**, this 3rd day of November, 2021.

                                              <u>/s/ Susan O. Hickey</u>
                                              Susan O. Hickey
                                              Chief United States District Judge