IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DEVION WILLIAMS                                                                                          PLAINTIFF

v.                                            Case No. 4:20-cv-4070

BNSF RAILWAY COMPANY and
UNION PACIFIC RAILRAOD COMPANY                                                DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendant BNSF Railway Company's Motion for Summary Judgment. (ECF No. 53). Plaintiff has responded (ECF No. 56), and Defendant has filed its reply. (ECF No. 62). The Court finds this matter ripe for consideration.

### I. BACKGROUND

This case arises out of injuries Plaintiff suffered after he fell beneath a moving train operated by Defendant BNSF Railway Company ("Defendant"). The accident occurred while Plaintiff was attempting to cross a railyard owned and operated by co-Defendant Union Pacific Railroad ("Union Pacific"). Plaintiff alleges one count of negligence against both Union Pacific and Defendant. The following facts relevant to Defendant's summary judgment motion are generally undisputed.

On the night of December 10, 2019, Plaintiff was walking south from downtown Texarkana toward his neighborhood in nearby College Hill. A Union Pacific railyard is situated directly between Texarkana and College Hill and runs at an angle from the southwest toward the northeast. Plaintiff was required to cross the railyard in order to reach his neighborhood. An overpass is situated over the northeastern portion of the railyard and provides a sidewalk for pedestrians that leads directly into College Hill. However, Plaintiff chose not to use the overpass, opting instead

to use a shortcut that runs directly over the railroad tracks.

Plaintiff's shortcut involved two pathways that run perpendicular to the railyard. On the north side of the railyard, a gravel path runs from a paved road and ends just before the first set of train tracks. On the south side of the railyard, a paved pathway runs away from the railyard directly opposite from where the gravel path is located. An aerial view of the railyard shows that both pathways are aligned with each other on either side of the railyard. (ECF No. 59-2). Plaintiff alleges, and it is not disputed, that the pathways appear to indicate an old or abandoned road that previously crossed the railyard at that location. Plaintiff further alleges that he and members of the public frequently use the pathway as a shortcut between downtown Texarkana and College Hill.[1] Defendant does not dispute that it knew the pathway was frequently used as a shortcut by pedestrians.

Plaintiff entered the railyard from the north via the gravel pathway. It is undisputed that a no trespassing sign is posted in the area where Plaintiff approached the railyard. The no trespassing sign is not lit at night. There were also no fences or barriers obstructing Plaintiff's path toward the tracks. As Plaintiff approached the railyard, he observed Defendant's train sitting idle along one of the railyard's center tracks. From Plaintiff's location, he could observe that one end of the train was situated further along the track toward the northeast. The other end of the train was situated further west and was obstructed from view by a curve in the tracks.

Plaintiff decided to climb between two railcars in order to cross to the other side of the railyard. Unbeknownst to Plaintiff, the train's crewmembers were simultaneously preparing to move the train onto a new set of tracks. Plaintiff, oblivious to the train's imminent movement, crossed several sets of tracks and climbed between two stationary railcars. At the same time

---

[1] Plaintiff has presented affidavits from Texarkana residents who state that they frequently cross between downtown Texarkana and College Hill via the path described. (ECF No. 59-13).

Plaintiff climbed the railcars, train operators began to move the train west. Plaintiff lost his balance and fell beneath the moving train as a result. The train caused serious injuries to both of Plaintiff's legs.

The train which injured Plaintiff was operated by three crewmembers: Glenn Hancock; Josh Janisch; and Nate Fortune. All three crewmembers have provided affidavits describing the train's movements on the date of Plaintiff's injury. (ECF Nos. 55-1, 55-2, 55-3). On this date, the train arrived in Texarkana from the southwest via the western portion of the railyard. When the train's lead locomotive entered the railyard, Hancock exited the train and waited while Fortune and Janisch continued to move the train along the tracks toward the northeast. The train continued ahead until it passed where Hancock was standing, and the train's lead locomotive stopped in the area just past where Plaintiff's injury occurred. This locomotive is the end of the train Plaintiff observed when he approached the railyard.

Once the train had stopped, Hancock boarded the train and began to reconfigure the rear locomotive so that it could now serve as the lead locomotive. At the same time, Fortune and Janisch reconfigured their end to serve as the rear locomotive. Once finished, Fortune and Janisch were transported back toward Hancock's location, and both boarded what had become the lead locomotive. Hancock exited the same locomotive and stood in the area near the train's new direction of travel. Hancock remained in this location while Fortune maneuvered the train back toward the south and onto a new track. There are no other train movements alleged in the record, and Plaintiff does not dispute that he fell beneath the train when it was repositioned onto the new track.

Hancock states that he maintained a constant lookout for any pedestrians on or near the tracks while he was present in the railyard. However, because of the curve in the railyard, length

of the train, and time of night, Hancock was unable to observe the rear of the train where Plaintiff's accident occurred. Fortune states that he maintained a lookout for pedestrians when he moved the train into the railyard and while he maneuvered the train back onto a new track. Janisch does not state that he maintained a lookout for pedestrians. All three crewmembers state that at no point did they observe any person on or near the railyard and that they had no knowledge of any non-railroad employee on Union Pacific's property on the date Plaintiff was injured. However, no crewmember was able to observe the northeast end of the train where Plaintiff's injury occurred when the crew maneuvered the train onto its new set of tracks.

## II. LEGAL STANDARD

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that

it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. DISCUSSION

Plaintiff's Second Amended Complaint alleges that his injuries were caused by the crewmembers' negligent operation of the train. To prove negligence under Arkansas law,[2] "there must be a failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." *Marlar v. Daniel*, 247 S.W.3d 473, 476 (Ark. 2007). Defendant argues that it is entitled to summary judgment because it did not owe a legal duty of care to Plaintiff. Accordingly, the Court must first determine what duty of care, if any, Defendant owed Plaintiff under the circumstances presented. If Defendant indeed owed Plaintiff a duty of care, the Court must then determine whether there is a genuine issue of material fact regarding whether Defendant breached that duty of care. The court will consider each matter in turn.

#### A. Duty

Defendant's argument that it owed no duty of care to Plaintiff is based on Defendant's assertion that Plaintiff was trespassing when he attempted to cross the railyard. Plaintiff does not explicitly reject Defendant's categorization of him as a trespasser. However, Plaintiff argues

---

[2] A federal court sitting in diversity, like the Court in this case, must apply the substantive law of the forum state, absent a federal statutory or constitutional directive to the contrary. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010). The Court is unaware of a federal statutory or constitutional directive providing otherwise, so Arkansas substantive law applies to this case.

5

generally that Defendant nevertheless owed him a duty of care because pedestrians frequently crossed the railyard between the gravel and paved pathways.  Although not explicit, Plaintiff's argument necessarily turns on whether Plaintiff had a license to cross the railyard by implicit invitation.  Accordingly, Plaintiff's status as a trespasser or a licensee by implication while on the railyard is directly before the Court.[3]

Under Arkansas law, a trespasser is one who comes upon the land without the consent of the possessor.  *Coleman v. United Fence Co.*, 668 S.W.2d 536, 537 (1984); *see also* Ark. Code Ann. § 18-60-108(c).  In contrast, a licensee is one who is on the premises of a landowner under an express or implied invitation, for one's own purpose and not for the mutual benefit of oneself and the owner.  *See Bader v. Lawson*, 898 S.W.2d 40, 42 (1995).  This Court has specifically held that under Arkansas Law, "an implied invitation requires some affirmative act on the part of the landowner to induce the person on to its property" and that the existence of a "well-worn path" beside railroad tracks does not "compel or induce the public . . . to use the path" or "come on to the railroad's property."  *Hall v. Union Pacific R.R. Co.*, No. 06-cv-1012, 2007 WL 676660 at *5 (W.D. Ark. March 1, 2007) (citing *Aluminum Co. of America v. Guthrie*, 793 S.W.2d 785(1990); *Missouri Pac. R. Co. v. English*, 61S.W.2d 445 (1933); *Louis Iron Mountain & Southern Ry. Co. v. Dooley*, 92 S.W. 789 (1906)).

The Court finds that Plaintiff was a trespasser when he attempted to cross the railyard.  It is undisputed that a no trespassing sign is posted in the area where Plaintiff attempted to cross the railyard and there is no evidence to suggest that Plaintiff had Defendant's consent to use the pathway.  There is also no evidence showing that Defendant made any affirmative attempt to entice

---

[3] The Court notes that no party argues that Defendant did not owe a duty of care to Plaintiff because it does not own or operate the railyard.  Accordingly, the Court will assume for the purposes of this motion that Defendant held dominion over the railyard sufficient to warrant consideration of premises liability.

pedestrians to use the pathway as a shortcut. Indeed, Plaintiff acknowledges that the pathway is either an old or abandoned road that *previously* crossed the tracks. There is no evidence showing that this pathway is intended for present use and Defendant's passive knowledge that pedestrians use the pathway as a shortcut, without more, cannot be held as an affirmative act sufficient to entice others to cross the railyard. Accordingly, the Court finds that Plaintiff was trespassing upon the railyard when his injuries occurred because he did not have affirmative or implied consent to use the pathway as a shortcut over the railyard.

### 1. Duty to Trespassers

Defendant argues that it owed no duty to Plaintiff as a trespasser because Plaintiff's presence in the railyard was unknown to Defendant's crewmembers when Plaintiff's injuries occurred. In response, Plaintiff argues that Defendant still owed a duty to keep a constant lookout for trespassers while the train was in motion.

Generally, "[a]n owner, lessee, or occupant of land does not owe a duty of care to a trespasser on the land . . . until the presence of the trespasser on the premises is known[.]" Ark. Code Ann. § 18-60-108(a)(1)-(2). However, Arkansas law also states that "it shall be the duty of all persons running trains . . . to keep a constant lookout for all persons, including . . . trespassers . . . upon the track of any and all railroads." Ark. Code Ann. § 23-12-907(a)(1). The Arkansas Supreme Court has long affirmed that the duty to keep a proper lookout statute applies without regard to a plaintiff's status as a trespasser. *See Chicago, R.I. & P. Ry. Co. v. Gunn*, 166 S.W. 568, 569 (Ark. 1914); *see also St. Louis, I.M. & S. Ry. Co. v. Elrod*, 173 S.W. 836, 837 (Ark. 1915) (holding that the duty to keep a constant lookout applied even though it was alleged that Plaintiff was "lying in a drunken stupor, with his arm across one of the rails, when the locomotive struck him").

The Court finds that Defendant owed Plaintiff a duty to keep a proper lookout while the train was moving, without regard to his status as a trespasser. Arkansas's lookout statute imposes a duty upon all who operate trains to keep a proper lookout for trespassers upon any railroad track. This duty is separate from the general duty of care owed to trespassers under normal circumstances because the duty to keep a proper lookout applies equally to "all persons, including licensees and trespassers[.]" Ark. Code Ann. § 23-12-907(a)(1). Accordingly, the Court finds that Defendant owed Plaintiff a duty to keep a proper lookout under Ark. Code Ann. § 23-12-907. Therefore, the Court must determine whether there is a genuine issue of material fact regarding whether Plaintiff's injuries were caused by Defendant's failure to keep a proper lookout.

**B. Proper Lookout**

Defendant argues that there is no disputed issue of material fact regarding whether its crewmembers maintained a proper lookout because it is uncontroverted that the crewmembers maintained a constant lookout in the train's direction of travel.

Arkansas employs a burden shifting framework to the duty to keep a proper lookout statute. "Under the lookout statute, when the plaintiff has proved facts and circumstances from which the jury might infer that [he] . . . had been injured on account of the operation of the train, and that the danger might have been discovered and the injury avoided if a lookout had been kept, then he has made out a prima facie case, and the burden is on the defendant to show that a lookout was kept as required by the statute." *Central Ry. Co. v. Lindley*, 151 S.W. 246, 248 (Ark. 1912). To properly shift the burden of proof under the lookout statute, "plaintiff must introduce proof of the injury under such circumstances as to raise a reasonable inference that the danger might have been discovered and the injury avoided if a lookout had been kept." *Kelly v. De Queen & E. R. Co.*, 298 S.W. 347, 348 (Ark. 1927). "[E]vidence which justifies a finding that the plaintiff was injured

8

by the defendant's train raises a presumption of negligence, and the burden is [then] on the railroad company to show that the proper lookout was kept." *Overstreet v. Missouri Pac. R.R. Co.*, 195 F. Supp. 542, 551 (W.D. Ark. July 6, 1961).

If a plaintiff succeeds in shifting the burden to defendant, then defendant "must . . . show that the injury was unavoidable by the exercise of ordinary care." *St. Louis-San Francisco Ry. Co. v. Williams*, 21 S.W.2d 611, 612 (Ark. 1929). Indeed, "the purpose of the act [is] to provide a different rule of liability against a railroad company causing an injury by the operation of its trains . . . and place[s] the burden of proof upon the railroad company in case of an injury to establish the fact that the duty to keep a lookout had been performed." *St. Louis, I. M. & S. Ry. Co. v. Gibson*, 155 S.W. 510, 513 (1913). The Arkansas Supreme Court has specifically held that a rail company is not required to maintain a lookout at the end of the train opposite the train's direction of travel. *See Missouri Pac. R. Co. v. Curcio*, 261 S.W. 896, 899 (Ark. 1924) (holding that "if the train was not moving northward, there was no duty on the part of the servants of the company to maintain a lookout on that end of the train").

The Court finds that, regardless of whether Plaintiff can shift the burden of proof to Defendant, there is no genuine issue of material fact regarding whether Defendant's crew members maintained a proper lookout in the train's direction of travel. The fact that Plaintiff was injured while attempting to cross between two railcars at the rear of the train is not in dispute. Indeed, Plaintiff acknowledges that the rear locomotive he observed to the northeast as he approached the railyard was the train's "caboose." (ECF No. 59). Plaintiff's injuries were caused when the train moved away from Plaintiff's location in the northeast section of the railyard. Thus, the train's crewmembers were not required to keep a lookout on the end of the train where Plaintiff's injuries occurred. It is also undisputed that at least one crew member was keeping a lookout in the train's

direction of travel while the train was in motion. Accordingly, there is no genuine issue of material fact upon which a reasonable jury could determine that the crewmember's lookout was improper because Plaintiff's injuries occurred at the rear of the train and away from the train's direction of travel. Therefore, Defendant is entitled to judgment on Plaintiff's negligent failure to maintain a proper lookout claim as a matter of law.

### C. Abnormally Dangerous Crossing

Plaintiff attempts to avoid summary judgment by arguing that Plaintiff's shortcut was an abnormally dangerous railroad crossing and thus Defendant was required to warn pedestrians of that abnormally dangerous condition. *See Scoville v. Missouri Pac. R. Co.*, 458 F.2d 639, 645 (8th Cir. 1972) (holding that under Arkansas law, "a railroad company may be found negligent for its failure to give special warnings at a crossing which is rendered abnormally dangerous by reason of unusual circumstances or conditions").

Plaintiff's argument is misplaced. Although a railroad may be found negligent for its failure to give special warnings at an abnormally dangerous railroad crossing, Plaintiff's shortcut across the railyard was not at an established railroad crossing. Indeed, Plaintiff acknowledges that the pathway across the railyard appears to indicate that a road previously crossed this section of the railyard. The only evidence showing that Plaintiff's shortcut is presently utilized as a railroad crossing is Plaintiff's assertion that pedestrians frequently used the pathway to cross between downtown Texarkana and College Hill. As stated above, Plaintiff was trespassing over the railyard when his injuries occurred. Moreover, evidence that pedestrians frequently used Plaintiff's shortcut, without more, is insufficient to convert the shortcut into an established railroad crossing. Accordingly, there is no genuine issue of material fact regarding whether Plaintiff was injured at an established railroad crossing and Defendant owed no duty of care to warn trespassers of any

abnormally dangerous conditions in the area surrounding Plaintiff's shortcut.

## IV.  CONCLUSION

Plaintiff was an undiscovered trespasser at the time he was injured by Defendant's train. Because of this, the train's operators only owed Plaintiff a duty to keep a proper lookout for Plaintiff in the direction in which the train was traveling.  It is undisputed that Plaintiff's injuries occurred at the end of the train opposite the train's direction of travel.  It is also undisputed that the train's crewmembers kept a constant lookout in the train's direction of travel while the train was in motion.  Accordingly, there is no genuine issue of material fact from which a reasonable jury could find that Plaintiff's injuries were caused by Defendant's failure to keep a proper lookout.

For the above-stated reasons, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 53) should be and hereby is **GRANTED**.  All claims against BNSF Railway Company are hereby **DISMISSED WITH PREJUDICE**.  A judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 3rd day of November, 2021.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge